**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

7800 W JEWELL LLC,                                   Civil Action No.:

      Plaintiff,

v.

TRUCK INSURANCE EXCHANGE,

      Defendant.

---

### COMPLAINT AND JURY DEMAND

---

**COMES NOW** Plaintiff, 7800 W Jewell LLC, by and through its undersigned counsel, and hereby submits this its Complaint against Defendant, Truck Insurance Exchange, and in support of its Complaint, alleges and avers as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this action seeking economic and non-economic damages arising from Defendant's breach of contract, bad faith conduct and unreasonable delay in the payment of covered benefits due and owing under Plaintiff's first-party insurance contract.

### PARTIES

2.      Plaintiff, 7800 W Jewell LLC ("Plaintiff") is a Colorado Limited Liability Company with its principal office in Lakewood, Colorado.

3.      7800 W Jewell LLC has one member, Gary Garcia, a natural person residing in Lakewood, Jefferson County, Colorado.

4.      Defendant, Truck Insurance Exchange ("Defendant" or "Truck Insurance"), is a mutual insurance company organized and existing under the laws of the state of California with its principal place of business in the state of California.

## JURISDICTION AND VENUE

5.      This court has jurisdiction and venue is proper pursuant to 28 U.S.C. §§ 1332(a) and 1441. There is complete diversity among the parties and the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. The property which is the subject of the claim is located in and the adjustment of the claim occurred in Colorado.

## FACTS COMMON TO ALL COUNTS

6.      Plaintiff is the owner of real property located at 7800 West Jewell Avenue, Lakewood, Jefferson County, Colorado 80232 ("Property").

7.      The Property is comprised of ten roofing systems.

8.      Each roofing system is covered with one of three roofing materials:

- ethylene propylene diene monomer (EPDM) membrane;
- granulated modified bitumen (Mod-Bit) membrane; or
- gravel-ballasted built-up roof (BUR).

9.      Roofing systems one, two, three, four, five, and six are clad with an ethylene propylene diene monomer (EPDM) membrane.

10.     Roofing systems two, seven, eight, and nine are clad with a granulated modified bitumen (Mod-Bit) membrane.

11.     Roofing system ten is clad with a gravel ballasted built-up membrane.

12.     The Property is ventilated via eleven gas-fired/DX packaged rooftop units (RTU), three split system air-conditioners, two evaporative coolers, one exhaust fan, and one intake/relief hood.

13.     Plaintiff purchased a Commercial Real Estate Premier Policy of insurance from Truck Insurance Exchange under Policy Number 60589-11-11 (the "Policy").

14.     The Policy provides $2,688,700.00 in Building property damage coverage for Plaintiff's Property.

15.     The Policy provides $250,000.00 in Building Ordinance or Law – B & C (Demo & ICC) Combined coverage for Plaintiff's Property.

16.     The Policy was issued with effective dates of January 29, 2017 through January 29, 2018. A true and accurate copy of the Policy is attached hereto as **Exhibit "A."**

17.     The Policy is an all risk policy of insurance.

18.     The Policy is a replacement cost value policy and covers loss to Plaintiff's Property.

19.     The Policy provides coverage for direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

20.     The Policy does not require that the Property sustain functional damage for coverage to be afforded to covered property at the premises caused by or resulting from any covered cause of loss.

21.     The Policy does not contain a cosmetic exclusion.

22.     Under the Policy, Truck Insurance agreed to adjust all losses with its insured fairly and timely.

23.     Plaintiff paid the premiums due under the Policy in a timely manner, and performed all duties and responsibilities required of it under the Policy.

24.     On or about May 8, 2017, during the Policy period, Plaintiff suffered a loss at the insured Property due to hail and wind.

25.     The damage from the hail and wind constituted a covered loss under the Policy.

26.     Plaintiff timely reported the covered loss and damage to Truck Insurance, and made a claim for the loss and damage to the Property.

27.     Truck Insurance assigned Claim Number 3008785258-1-1 to the Property loss.

28.     Truck Insurance assigned its claims representative, Joe Bartlett, to investigate and adjust Plaintiff's claim for direct physical loss to the Property resulting from the hail and wind storm occurring on May 8, 2017.

29.     In June 2017, Truck Insurance retained Knott Laboratory, LLC ("Knott"), to inspect the Property to determine if the roof coverings were damaged as a result of hail impact.

30.     On or about June 19, 2017, and June 22, 2017, Knott performed a site inspection of the roof coverings of the Property.

31.     Knott did not review the insurance policy terms, limits, conditions, or coverages.

32.     Truck Insurance failed to instruct Knott that the Policy provides coverage for direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

33.     Truck Insurance failed to instruct Knott that the Policy does not require that the Property sustain functional damage for coverage to be afforded to covered property at the premises caused by or resulting from any covered cause of loss.

34.     Truck Insurance failed to instruct Knott that the Policy does not contain a cosmetic exclusion.

35.     On or about June 29, 2017, Knott drafted a report ("Knott Inspection Report") which outlined its conclusions related to its inspections on June 19, 2017, and June 22, 2017. A copy of the Knott Inspection Report is attached hereto as **Exhibit "B."**

36.     The Knott Inspection Report improperly assumed a hail threshold of 1.50" hailstones necessary to cause damage to an ethylene propylene diene monomer (EPDM) roofing system.

37.     The Knott Inspection Report improperly assumed a hail threshold of 1.50" hailstones necessary to cause damage to a modified bitumen (Mod-Bit) roofing system.

38.     The Knott Inspection Report improperly assumed a hail threshold of 2.50" hailstones necessary to cause damage a gravel ballasted built-up roofing system.

39.     The Knott Inspection Report concluded that the Property was potentially impacted by hail up to 2.00" inches in diameter on May 8, 2017.

40.     The Knott Inspection Report concluded that the Property was potentially impacted by hail up to 1.50" in diameter on May 24, 2014.

41.     The Knott Inspection Report identified punctures consistent with hailstone impact located within the surface of the Property's ethylene propylene diene monomer (EPDM) roofing system.

42.     The Knott Inspection Report identified a number of indentations to the underlying substrate that were coincident with spatter marks in the ethylene propylene diene monomer (EPDM) membrane surface, consistent with impacts from hailstones.

43.     The Knott Inspection Report identified multiple indentations and fractures in the underlying polyiso insulation board of the ethylene propylene diene monomer (EPDM) roofing system.

44.     The Knott Inspection Report identified circular blemishes located on the surface of the modified bitumen (Mod-Bit) roofing system.

45.     The Knott Inspection Report identified the presence of indentations to the underlayment of the granulated cover sheet of the modified bitumen (Mod-Bit) roofing system.

46.     The Knott Inspection Report identified the presence of pronounced fracturing of the underside of the modified bitumen (Mod-Bit) roofing system.

47.     The Knott Inspection Report identified blemishes consistent with hailstone impact to the north and west facing facets of the modified bitumen (Mod-Bit) parapet coverings surrounding the gravel ballasted built-up roofing system.

48.     The Knott Inspection Report determined that the ethylene propylene diene monomer (EPDM) roofing system was damaged by hailstone impact.

49.     Despite acknowledging that hailstones of up to two inches in diameter impacted the Property on May 8, 2017, the Knott Inspection Report determined that the damage to the ethylene propylene diene monomer (EPDM) roofing system was the result of a prior hailstorm event.

50.     The Knott Inspection Report determined that the modified bitumen (Mod-Bit) roofing system was damaged by hailstone impact.

51.     Despite acknowledging that hailstones of up to two inches in diameter impacted the Property on May 8, 2017, the Knott Inspection Report determined that the damage to the modified bitumen (Mod-Bit) roofing system was the result of a prior hailstorm event.

52.      The Knott Inspection Report determined that the gravel ballasted built-up roofing system was not damaged by hailstone impact.

53.     On or about July 7, 2017, sixty days after the hail and wind storm, Truck Insurance provided Plaintiff with a copy of its first damage estimate which outlined only $109,641.09 in replacement cost value covered damages. A copy of Truck Insurance First Damage Estimate has been attached hereto as **Exhibit "C."**

54.     Truck Insurance's first damage estimate failed to include numerous covered damages, including, but not limited to:

(a)     Roof One – North Carport
   - Elastomeric roof covering
   - Removal and replacement of 87.00 concrete tiles

    (b)      Roof Two – EPDM
- Removal and replacement of 143.00 linear feet of flash parapet wall
- Removal and replacement of 5.00 pipe jack flashing
- Detachment and resetting of digital satellite system

    (c)      Roof Three – Modified Bitumen
- Detachment and resetting of digital satellite system
- Installation of 421.00 linear feet of perlite cant strips

    (d)      Roof Five – Gravel Ballasted
- Removal and replacement of 142.00 linear feet of large cap flashing

    (e)      Exterior Damages & General Conditions
- Two weeks of telehandler/forklift operation
- 80.00 hours of equipment operation
- HVAC damages in excess of $45,000.00
- Preparation and painting of 5,980.00 square feet of the rear elevation

55.    Plaintiff would be reasonably likely to retain the services of a general contractor based on the complexity of the repairs outlined in Truck Insurance First Damage Estimate.

56.    While Truck Insurance's first damage estimate provides for general demolition, HVAC, roofing, soffit/fascia/gutter, and temporary repairs, Truck Insurance Exchange's first damage estimate improperly excludes general contractor overhead and profit.

57.    Truck Insurance's failure to provide general contractor overhead and profit within its first damage estimate has resulted in the delay and denial of the payment of covered benefits to Plaintiff without a reasonable basis.

58.    Each of the items outlined in Paragraph 54 were agreed to by Truck Insurance some five months later in December 2017.

59.    Due to Truck Insurance deficient investigation, Plaintiff was forced to retain Pivot Adjusters, a Colorado state licensed public adjusting firm, to assist in the adjustment of Plaintiff's claim for direct physical loss to the Property resulting from the May 8, 2017 hail and wind storm.

60.     In July 2017, Plaintiff retained DG Draper Consulting, LLC ("DG Draper Consulting"), an engineering firm specializing in HVAC design and forensic engineering, to evaluate the damaged HVAC units at the Property and provide repair recommendations.

61.     On or about August 1, 2017, DG Draper Consulting, LLC, finalized its report ("DG Draper Consulting Report").

62.     The DG Draper Consulting Report concluded that seven of the eleven gas-fired/DX packaged rooftop units sustained hail damage such that the units must be replaced.

63.     The DG Draper Consulting Report concluded that two of the three split system air-conditioners sustained hail damage such that the units must be replaced.

64.     The DG Draper Consulting Report concluded that the exterior ductwork serving four of the eleven gas-fired/DX packaged rooftop units and the exhaust fan sustained hail damage.

65.     The DG Draper Consulting Report concluded that the top cabinet panels of all eleven rooftop units demonstrated circular dents consisting with being struck by hail.

66.     The DG Draper Consulting Report concluded that the Property exhaust fan, intake/relief hood, exhaust duct, twenty-five vent caps, and three intake/relief goosenecks demonstrated circular dents consisting with being struck by hail.

67.     The DG Draper Consulting Report recommended, among other things:

- demolition and replacement of seven of the eleven hail damaged gas-fired/DX packaged rooftop units;
- demolition and replacement of exterior ductwork serving four of the eleven gas-fired/DX packaged rooftop units;
- demolition and replacement of the top cabinet panels of four of the eleven gas-fired/DX packaged rooftop units;
- demolition and replacement of the condensing unit and associated interior evaporator coils of two of the three split system air-conditioners;
- demolition and replacement of the exhaust fan; and
- demolition and replacement of twenty-five vent caps.

68.     On or about September 5, 2017, Plaintiff's representative, Pivot Adjusters, provided Truck Insurance with Plaintiff's first damage estimate which outlined $914,076.20 in replacement cost value covered damages. A copy of Plaintiff's First Damage Estimate is attached hereto as **Exhibit "D."**

69.     On or about September 5, 2017, Plaintiff's representative, Pivot Adjusters, provided Truck Insurance with a copy of the DG Draper Consulting Report. A copy of the DG Draper Consulting Report is attached hereto as **Exhibit "E."**

70.     On or about September 5, 2017, nearly two months after the issuance of its first deficient damage estimate, Truck Insurance provided Plaintiff with a copy of its second damage estimate which outlined $253,201.94 in replacement cost value covered damages. A copy of Truck Insurance Second Damage Estimate has been attached hereto as **Exhibit "F."**

71.     Truck Insurance's second damage estimate failed to include numerous covered damages, including, but not limited to:

(a)     Roof One – North Carport
- Elastomeric roof covering
- Removal and replacement of 87.00 concrete tiles

(b)     Roof Two – EPDM
- Removal and replacement of 143.00 linear feet of flash parapet wall
- Removal and replacement of 5.00 pipe jack flashing
- Detachment and resetting of digital satellite system

(c)     Roof Three – Modified Bitumen
- Detachment and resetting of digital satellite system
- Installation of 421.00 linear feet of perlite cant strips

(d)     Roof Five – Gravel Ballasted
- Removal and replacement of 142.00 linear feet of large cap flashing

(e)     Exterior Damages & General Conditions
- Two weeks of telehandler/forklift operation
- 80.00 hours of equipment operation
- HVAC damages in excess of $45,000.00

- Preparation and painting of 5,980.00 square feet of the rear elevation

72.     Plaintiff would be reasonably likely to retain the services of a general contractor based on the complexity of the repairs outlined in Truck Insurance Second Damage Estimate.

73.     While Truck Insurance's Second Damage Estimate provides for general demolition, HVAC, roofing, soffit/fascia/gutter, and temporary repairs, Truck Insurance's First Damage Estimate improperly excludes general contractor overhead and profit.

74.     Truck Insurance's failure to provide general contractor overhead and profit within its Second Damage Estimate has resulted in the delay and denial of the payment of covered benefits to Plaintiff without a reasonable basis.

75.     Each of the items outlined in Paragraph 71 were agreed to by Truck Insurance some three months later in December 2017.

76.     Truck Insurance's second damage estimate included an additional $101,685.21 in covered damages that were not provided in Truck Insurance's first damage estimate.

77.     Truck Insurance's failure to include the damages outlined in Paragraph 70 within its first damage estimate resulted in the delay of the payment of $101,685.21 in covered benefits without a reasonable basis.

78.     On or about September 27, 2017, over three weeks after the issuance of its second deficient damage estimate, Truck Insurance provided Plaintiff with a copy of its third damage estimate which outlined $268,443.68 in replacement cost value covered damages. A copy of Truck Insurance Third Damage Estimate has been attached hereto as **Exhibit "G."**

79.     Truck Insurance's third damage estimate failed to include numerous covered damages, including, but not limited to:

(a)     Roof One – North Carport
- Elastomeric roof covering

- • Removal and replacement of 87.00 concrete tiles

(b) Roof Two – EPDM
- • Removal and replacement of 5.00 pipe jack flashing

(c) Roof Five – Gravel Ballasted
- • Removal and replacement of 142.00 linear feet of large cap flashing

(d) Exterior Damages & General Conditions
- • HVAC damages in excess of $38,000.00
- • Preparation and painting of 5,980.00 square feet of the rear elevation

80.     Plaintiff would be reasonably likely to retain the services of a general contractor based on the complexity of the repairs outlined in Truck Insurance Third Damage Estimate.

81.     While Truck Insurance's Third Damage Estimate provides for general demolition, electrical – special systems, heavy equipment, HVAC, roofing, soffit/fascia/gutter, and temporary repairs, Truck Insurance's Third Damage Estimate improperly excludes general contractor overhead and profit.

82.     Truck Insurance's failure to provide general contractor overhead and profit within its Third Damage Estimate has resulted in the delay and denial of the payment of covered benefits to Plaintiff without a reasonable basis.

83.     Each of the items outlined in Paragraph 79 were agreed to by Truck Insurance some three months later in December 2017.

84.     Truck Insurance Exchange's Third Damage Estimate included an additional $15,241.74 in covered damages that were not provided in Truck Insurance Exchange's First Damage Estimate.

85.     Truck Insurance's failure to include the damages outlined in Paragraph 78 within its First Damage Estimate resulted in the delay of the payment of $15,241.74 in covered benefits without a reasonable basis.

86.     On or about December 12, 2017, over six months after the hail and wind storm, Truck Insurance provided Plaintiff with a copy of its fourth damage estimate which outlined $334,043.72 in replacement cost value covered damages. A copy of Truck Insurance Fourth Damage Estimate has been attached hereto as **Exhibit "H."**

87.     Plaintiff would be reasonably likely to retain the services of a general contractor based on the complexity of the repairs outlined in Truck Insurance Fourth Damage Estimate.

88.     While Truck Insurance's Fourth Damage Estimate provides for cleaning, general demolition, electrical – special systems, heavy equipment, HVAC, painting, roofing, soffit/fascia/gutter, and temporary repairs, Truck Insurance's Third Damage Estimate improperly excludes general contractor overhead and profit.

89.     Truck Insurance's failure to provide general contractor overhead and profit within its Fourth Damage Estimate has resulted in the delay and denial of the payment of covered benefits to Plaintiff without a reasonable basis.

90.     Truck Insurance's Fourth Damage Estimate included an additional $65,600.04 in covered damages that were not provided in Truck Insurance First, Second, or Third Damage Estimates.

91.     Truck Insurance's failure to include the damages outlined in its Fourth Damage Estimate resulted in the delay of the payment of $65,600.04 in covered benefits without a reasonable basis.

92.     Truck Insurance failure to provide general contractor overhead and profit within ANY of its damage estimates has resulted in the delay and denial of payment of covered benefits to Plaintiff without a reasonable basis.

93.     Despite objective evidence of additional covered damage to the Property, Truck Insurance continues to improperly deny Plaintiff's claim for loss to the Property resulting from the hail storm occurring on May 8, 2017.

94.     Despite being presented with a comprehensive estimate of covered damages by Pivot Adjusters, Truck Insurance continues to improperly deny Plaintiff's claim for loss to the Property resulting from the hail storm occurring on May 8, 2017.

95.     Truck Insurance's continued refusal to indemnify its insured has resulted in the delay and denial of the payment of over $600,000.00 in covered benefits without a reasonable basis.

96.     Plaintiff has fulfilled all duties required of it under the Policy after discovery of the loss.

97.     Plaintiff has performed all conditions precedent and subsequent required under the insurance Policy, or alternatively, have been excused from performance by the acts, representations, and/or conduct of Defendant.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

98.     Plaintiff realleges and reaffirms Paragraphs 1-97 as if fully set forth herein.

99.     Plaintiff purchased an all risk policy requiring Truck Insurance Exchange to pay for any and all fortuitous damages resulting from a loss not expressly excluded or otherwise limited by the policy.

100.     The insurance Policy between Plaintiff and Truck Insurance Exchange is a binding contract.

101.     Plaintiff paid premiums and otherwise performed all conditions precedent to recovery of benefits under its Policy in the insurance contract with Truck Insurance Exchange.

102.    Truck Insurance Exchange has denied certain covered damages and continues to deny certain claimed damages.

103.    The actions of Truck Insurance Exchange were intended to dissuade Plaintiff in pursuing benefits due and owing under the terms of the Policy.

104.    Truck Insurance Exchange failed to perform its contractual duties to adequately compensate Plaintiff under the terms of the Policy.

105.    Truck Insurance Exchange has refused to pay the full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged Property, and all conditions precedent to recover upon the Policy had been carried out and accomplished by Plaintiff.

**WHEREFORE**, Plaintiff, 7800 W Jewell LLC, respectfully requests this Court enter judgment against Defendant, Truck Insurance Exchange, for damages resulting from its breach of contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

106.    Plaintiff realleges and reaffirms Paragraphs 1-105 as if fully set forth herein.

107.    Under the Policy and Colorado law, Truck Insurance owes its insured the duty of good faith and fair dealing.

108.    An insurer breaches its duty of good faith and fair dealing when it engages in unfair claim settlement practices.

109.    Truck Insurance sold Plaintiff the Policy at issue, the intent of which was to provide coverage for direct physical loss or damage to covered property at the Property caused by or resulting from any covered cause of loss.

110.    Truck Insurance knew that Plaintiff purchased the Policy to protect its Property in the event of a loss.

111.    Truck Insurance owed Plaintiff the non-delegable duty to investigate its claim objectively and not look for ways to deny benefits or attempt to not pay the full amount owed.

112.    Truck Insurance owed Plaintiff the duty to give equal consideration to the financial interests of Plaintiff, and not give greater consideration to its own financial interests while investigation and adjusting Plaintiff's claim.

113.    Truck Insurance failed to interpret its insurance policy reasonably.

114.    Truck Insurance failed to resolve doubts concerning insurance coverage in favor of the policyholder.

115.    Truck Insurance failed to evaluate the reports received from its consultants to determine whether the consultant had conducted the necessary investigation of the claim.

116.    Truck Insurance failed to instruct its consultants on the terms and conditions of the Policy.

117.    Truck Insurance failed to conduct a thorough and timely investigation of Plaintiff's claim in accordance with insurance industry claims handling standards and practices.

118.    Truck Insurance knew that its decision to underpay benefits owed to Plaintiff was intentional and not accidental.

119.    Truck Insurance knew that it owed an obligation of good faith and fair dealing to Plaintiff, but misrepresented Policy benefits and failed to complete a full and fair investigation.

120.    Truck Insurance failed to treat Plaintiff's interests with equal regard to its own.

121.    Truck Insurance mischaracterized the facts and coverage to the benefit of itself.

122.     Truck Insurance failed to conduct a full, fair, and prompt investigation of Plaintiff's claim.

123.     Truck Insurance failed to objectively evaluate Plaintiff's claim based on all available evidence, and not just evidence which Truck Insurance believed supported its position.

124.     Truck Insurance improperly denied Plaintiff's claim by failing to examine and question its retained consultant's reports to assure that they contained all opinions necessary to properly evaluate the claim.

125.     Truck Insurance improperly denied Plaintiff's claim by failing to examine and question its retained consultant's reports to assure that they were based on all relevant and available evidence.

126.     Truck Insurance representatives, including Joe Bartlett, received income-based compensation to quickly close Plaintiff's claim for direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

127.     Truck Insurance representatives, including Joe Bartlett, received income-based compensation to reduce claims payments made to Plaintiff on its claim for direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

128.     Truck Insurance improperly set claims handling goals to reduce the amount paid on claims, including Plaintiff's claim for direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

129.     Truck Insurance improperly denied Plaintiff's claim to reduce overall claims payments.

130.     Truck Insurance improperly denied Plaintiff's claim to increase profits.

131.     Truck Insurance improperly denied Plaintiff's claim to maintain its loss ratio.

132.    Truck Insurance improperly denied Plaintiff's claim to meet department goals.

133.    Truck Insurance improperly denied Plaintiff's claim by providing financial incentives to its personnel, including Joe Bartlett, to influence claims handling.

134.    Truck Insurance improperly denied Plaintiff's claim to reduce the average amount paid on overall claims.

135.    Truck Insurance's conduct in the handling of Plaintiff's claim demonstrates that Truck Insurance Exchange was focused on benefiting itself to the detriment of Plaintiff.

136.    Truck Insurance has committed unfair settlement practices, including, but not limited to:

> (a)    Truck Insurance Exchange has failed to acknowledge and act reasonably promptly upon communication with respect to claims arising under insurance policies;
>
> (b)    Truck Insurance Exchange has failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
>
> (c)    Truck Insurance Exchange refused to pay claims without conducting a reasonable investigation based upon all available information;
>
> (d)    Truck Insurance Exchange has failed to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;
>
> (e)    Truck Insurance Exchange has failed to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;
>
> (f)    Truck Insurance Exchange has misrepresented terms and conditions of the Policy in an attempt to influence its Insured to settle for less than all benefits reasonably afforded under the Policy for the subject loss and damage; and
>
> (g)    Truck Insurance Exchange encourages its claims representatives to engage in unfair claims settlement practices against its Insured, thereby violating applicable laws and regulations of the state of Colorado.

137.    As a direct and proximate result of Truck Insurance's action, Plaintiff has:

> (a)    Incurred increased costs to repair, restore and/or replace the significant property damage that was caused by direct physical loss or damaged resulting from the May 8, 2017 hail and wind storm;
>
> (b)    Suffered damages as a proximate result of the misconduct alleged; and

(c)     Suffered and will continue to suffer other expenses, including loss of pre-judgment interest, attorneys' fees, investigatory gees, and other losses.

**WHEREFORE**, Plaintiff, 7800 W Jewell LLC, respectfully requests this Court enter judgment against Defendant, Truck Insurance Exchange, for damages resulting from its breach of its duty of good faith and fair dealing, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

### THIRD CLAIM FOR RELIEF
**(Unreasonable Delay and Denial of Payment of Covered Benefits
Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)**

138.     Plaintiff re-alleges and reaffirms Paragraphs 1-137 as though fully set forth herein.

139.     Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

140.     Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

141.     Plaintiff is a first-party claimant within the meaning of Colorado Revised Statute § 10-3-1115(1)(b)(1).

142.     Plaintiff suffered a loss covered by the Policy and submitted a claim for that loss to Truck Insurance.

143.     The claimed loss and damage submitted by Plaintiff was covered by the Policy and Plaintiff was owed covered benefits under the Policy.

144.     Truck Insurance delayed payment of covered benefits without a reasonable basis for its actions.

145.   Truck Insurance denied payment of covered benefits without a reasonable basis for its actions.

146.   Truck Insurance has unreasonably delayed and denied covered benefits without a reasonable basis for doing so as alleged in the preceding paragraphs of Plaintiff's Complaint.

147.   Truck Insurance delayed and denied payment of covered benefits without a reasonable basis for its action by failing to properly investigate its insured's loss.

148.   Truck Insurance delayed and denied payment of covered benefits without a reasonable basis for its action by providing a First Damage Estimate without having documented a reasonable investigation based upon all information.

149.   Truck Insurance delayed and denied payment of covered benefits without a reasonable basis for its action by providing four damages estimate which do not include all covered damages.

150.   Truck Insurance delayed and denied payment of covered benefits without a reasonable basis for its action by providing four damages estimate which improperly withheld general contractor overhead and profit.

151.   Truck Insurance delayed and denied payment of covered benefits without a reasonable basis for its action by forcing Plaintiff to retain its own professionals to help properly adjust the covered loss.

152.   Despite receipt of Plaintiff's comprehensive estimate, Truck Insurance denied and delayed payment of covered benefits without a reasonable basis for doing so.

153.   Truck Insurance unreasonably denied and delayed payment of covered benefits without a reasonable basis to reduce overall claims payments.

154. Truck Insurance unreasonably denied and delayed payment of covered benefits without a reasonable basis to increase profits.

155. Truck Insurance unreasonably denied and delayed payment of covered benefits without a reasonable basis to maintain its loss ratio.

156. Truck Insurance unreasonably denied and delayed payment of covered benefits without a reasonable basis to meet department goals.

157. Truck Insurance unreasonably denied and delayed payment of covered benefits without a reasonable basis by providing financial incentives to its personnel, including Joe Bartlett, to determine claims handling.

158. Truck Insurance unreasonably denied and delayed payment of covered benefits without a reasonable basis by motivating its claims department to pay less on claims, such as Plaintiff's, than what is otherwise owed.

159. Truck Insurance unreasonably denied and delayed payment of covered benefits without a reasonable basis to reduce the average amount paid on overall claims.

160. Truck Insurance unreasonably denied and delayed payment of covered benefits without a reasonable basis by asserting coverage positions that it knew were without merit.

161. Based upon the foregoing Paragraphs is therefore entitled to two times the covered benefit, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

**WHEREFORE**, Plaintiff, 7800 W Jewell LLC, respectfully requests this Court enter judgment against Defendant, Truck Insurance Exchange, for damages authorized pursuant to Colorado Revised Statute § 10-3-1116, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and other such relief as the Court deems appropriate.

## <u>REQUEST FOR JURY TRIAL</u>

162.    Plaintiff requests trial by jury with respect to all claims and issues triable to a jury.

Respectfully submitted this 3rd day of April, 2018

/s/ Jonathan E. Bukowski
Larry E. Bache, Jr., Esq.
Jonathan E. Bukowski, Esq.
Merlin Law Group, PA
1001 17th Street, Ste. 1150
Denver, CO 80202
Telephone:  720-665-9680
Facsimile:   720-665-9681
E-Mail: lbache@merlinlawgroup.com
E-Mail: jbukowski@merlinlawgroup.com
